**BROWN et al., Appellees,**

**v.**

**BROWN, Appellant.**

[Cite as *Brown v. Brown* (1993), 90 Ohio App.3d 781.]

Court of Appeals of Ohio,
Geauga County.

No. 92–G–1726.

Decided Oct. 4, 1993.

782

*Patricia J. Schraff,* for appellees.

*A.M. Psenicka,* for appellant.

CHRISTLEY, Presiding Judge.

This is an accelerated appeal from a decision of the Geauga County Court of Common Pleas, granting summary judgment in favor of appellees, James H. Brown and Tammy Velotta, on their complaint for a declaratory judgment. Appellees are the co-executors of the estate of Chester Brown.

Appellant, Eleanor M. Brown, was married to Chester for approximately thirty-one years. On January 10, 1992, appellant and Chester filed a petition for the dissolution of their marriage. Attached to this petition was a separation agreement, which the couple had signed two days earlier.

In relation to the marital residence, the separation agreement provided that appellant had agreed to immediately quitclaim her interest in the property to Chester. To then "equalize" the property distribution, the agreement further provided that Chester would pay appellant the sum of $80,000 "on or before January 14, 1992." In addition, the agreement specifically stated that this "exchange" of money for the marital residence "shall be binding on the heirs and executors or administrators of the parties."

On January 17, 1992, Chester committed suicide. Prior to taking his life, Chester had not complied with the separation agreement, in that he had not paid appellant the $80,000. However, upon being appointed the co-executors of Chester's estate, appellees offered to pay appellant the sum. When appellant refused to accept the offer, appellees brought the instant action, seeking an order declaring that the separation agreement was still binding upon appellant and the estate.

After appellant had answered and also filed two counterclaims, appellees moved for summary judgment. In responding to the motion, appellant argued, *inter alia,* that the separation agreement was no longer binding because Chester had failed to pay the $80,000 on or before January 14, 1992. In its entry granting appellees' motion, the trial court rejected this argument, noting that the agreement did not provide that it was conditioned upon the payment of the sum. As a result, the court declared that the agreement was still binding upon the parties.

Before this court, appellant has advanced two assignments of error for review. The first assignment pertains to the merits of the trial court's decision on

appellees' motion. Appellant contends that the trial court erred in granting summary judgment because Chester's failure to pay the money in a timely manner constituted a material breach of the separation agreement. Specifically, she submits that Chester's actions prior to his death rendered the agreement nonbinding because time was of the "essence" as to the payment of the money.

Before addressing the merits of this argument, this court would note that the agreement at issue contained certain covenants indicating that the couple intended for the agreement to be the final settlement of their respective rights arising from their marriage. Besides providing that the exchange of money for the marital residence would be binding upon the couple's heirs and executors, the agreement also stated that it would continue to be binding even if a final decree were not issued in the proceeding to dissolve the marriage. In interpreting similar provisions, courts of this state have held that such language indicates that the parties intended to be bound even when one party dies before the marriage is dissolved. *In re Estate of Hogrefe* (1986), 30 Ohio App.3d 238, 30 OBR 397, 507 N.E.2d 414. Thus, if the agreement were valid in all other respects, it would still be binding upon appellant and Chester's estate.

As a general proposition, a separation agreement is subject to the same rules of construction as any other type of contract. *Forstner v. Forstner* (1990), 68 Ohio App.3d 367, 372, 588 N.E.2d 285, 288. Likewise, as with any other contract, the proper interpretation of an agreement is a question of law. *Id.*

Ohio courts have generally held that in contractual relationships, the time of performance is not of the essence. See, *e.g., Lake Ridge Academy v. Carney* (Oct. 16, 1991), Lorain App. No. 91CA005063, unreported, at 10, 1991 WL 215024, citing *Kirby v. Harrison* (1853), 2 Ohio St. 326. However, the parties can alter this basic rule by including an express stipulation on the matter. *Mays v. Hartman* (1947), 81 Ohio App. 408, 37 O.O. 228, 77 N.E.2d 93. Moreover, the courts of this state have consistently held that such a requirement can be implied from the nature of the contract itself, or from the circumstances under which it was negotiated. *Lake Ridge Academy; Green, Inc. v. Smith* (1974), 40 Ohio App.2d 30, 69 O.O.2d 17, 317 N.E.2d 227; *Juratovac v. Gerl* (Oct. 2, 1980), Cuyahoga App. No. 41841, unreported.[1]

---

1. The holding that the circumstances surrounding the negotiation of the contract can be considered in determining whether time was of the essence necessarily implies that parol evidence can be considered in interpreting the contract. Although the cited Ohio cases do not address this point, it follows from basic contract law that such facts can only be considered when the contract is ambiguous as to this point. That is, facts concerning the surrounding circumstances cannot be employed to vary or contradict the terms of the written contract. *Johnson v. Schuchardt* (1933), 333 Mo. 781, 63 S.W.2d 17. Any further consideration of the surrounding circumstances would conflict with the basic parol evidence rule.

■ As appellant correctly notes, some courts have held that even in the absence of an express stipulation, time will be found to have been of the "essence" when the contract sets forth a specific date for performance. *Domigan v. Domigan* (1933), 46 Ohio App. 542, 189 N.E. 860. Although the *Domigan* decision is now approximately sixty years old, its basic holding is still being followed by some appellate districts. See *Lake Ridge Academy; Everett v. Reece* (Feb. 24, 1989), Lucas App. No. L–88–060, unreported, 1989 WL 14745.

However, the support for *Domigan* has not been unanimous. See *Wardell v. Turkovich* (July 31, 1992), Tuscarawas App. No. 91AP070037, unreported, 1992 WL 195480; *Juratovac.* These cases hold that a reference to a specific date for performance does not constitute an express stipulation on whether time was of the essence. Under this line of authority, performance within a reasonable time of the specified date is sufficient to comply with the requirements of the contract.

*Wardell* involved a contract for the purchase of real property. In holding that the inclusion of a specific date for closing did not make time of the essence, the Fifth Appellate District quoted 3A Corbin on Contracts (1960) 365, Section 716. Although the following was not quoted in *Wardell,* Corbin indicates that this holding is based upon the following rationale:

"The reason that payment or conveyance at the exact time is not 'of the essence,' even though delay will be a breach of contract and a cause of action, is that the injury caused by the delay is little or nothing. Delays are frequent in these transactions; and it is the custom of men to overlook them, even though they may have stated in advance that they would not. The reason can also be stated in this form: performance at a time later than specified in the contract is 'substantial performance.'" (Footnote omitted.)

Even though the provision at issue in the instant case was just one of many covenants contained in the separation agreement, it was still essentially a promise to pay a sum of money in exchange for an interest in real property. As a result, the foregoing analysis is applicable. Due to the multifaceted nature of the transaction, it is presumed that the parties did not intend for time to be of the essence in the absence of any express stipulation in the agreement. In this case, the provision at issue did not contain such a stipulation; instead, it merely indicated that the sum was to be paid before January 14, 1992.

■ In responding to appellees' motion for summary judgment, appellant submitted her own affidavit for consideration. While this document contained many conclusory statements which lacked any evidential value, appellant did state that in negotiating the separation agreement, she told Chester and his attorney that she had to have the funds in question by January 14. However, since the language of the provision at issue was not ambiguous, this statement was not

admissible under the parol evidence rule. Again, due to the fact that the provision concerned a transfer of an interest in real property, the parties had to include an express stipulation before time would be of the essence. Although a different conclusion might be reached if the nature of the provision were different, the instant language was not ambiguous as a matter of law.

■ Pursuant to the foregoing analysis, Chester's failure to pay the amount on the specified date did not constitute a breach of the separation agreement. However, even if we were to conclude that a breach occurred, the evidentiary materials submitted by the parties did not support the conclusion that this breach was material in nature. In her affidavit, appellant never indicated that the entire agreement hinged upon the timely payment of the money. As previously mentioned, our review of the agreement indicates that it contained multiple covenants on the part of appellant and Chester.

Thus, since the purpose of the agreement would not have been defeated, Chester's failure to pay the money on the specified date would not have been a material breach. See *Ohio Comp. Serv. Co. v. Smith* (May 10, 1991), Lucas App. No. L–90–104, unreported, 1991 WL 77494. Under these circumstances, appellant could have maintained an action for damages, but the remainder of the agreement would have still been binding.

Under her first assignment, appellant also contends that the trial court erred in enforcing the agreement because there was a lack of consideration. Specifically, she argues that had she known that Chester was going to commit suicide, she would not have agreed to the distribution of the marital assets.

■ As to this point, this court would note that as in any separation agreement, the basic consideration in the instant agreement was the mutual release of the rights and obligations of marriage. Thus even if the distribution of the marital assets were disproportionate in Chester's favor, the agreement was still supported by sufficient consideration. Moreover, this court would further note that appellant failed to present any evidentiary materials indicating that her consent to the agreement had been induced by fraud.

Pursuant to the foregoing analysis, we conclude that the trial court did not err in holding that the separation agreement was still binding. Thus, appellant's first assignment is without merit.

■ Prior to filing her response to the summary judgment motion, appellant moved for leave to filed an amended counterclaim. In conjunction with this motion, appellant also filed the amended counterclaim itself. The trial court denied appellant's motion, concluding that the new counterclaim did not raise any new issues. Under her second assignment, appellant contends that the trial court erred in denying the motion.

A comparison of the original and amended counterclaim shows that although the latter contains more allegations of fact, it essentially raised the exact claims and issues as the original. Under these circumstances, the trial court did not abuse its discretion in denying the motion. Thus, her second assignment is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY, J., concurs.

NADER, J., dissents.