[Cite as *Marion v. Hoffman*, 2010-Ohio-4821.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

CITY OF MARION,

    PLAINTIFF-APPELLANT,             CASE NO. 9-10-23

    v.

TOM HOFFMAN,                       O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Marion Municipal Court
Trial Court No. CRB 09 01091

Judgment Reversed and Cause Remanded

Date of Decision:   October 4, 2010

APPEARANCES:

    *Steve E. Chaffin* for Appellant

    *Jeff Ratliff* for Appellee

**PRESTON, J.**

{¶1} Plaintiff-appellant, the City of Marion (hereinafter "the City"), appeals the Marion Municipal Court's judgment entry dismissing the complaint filed against defendant-appellee, Tom Hoffman (hereinafter "Hoffman"). We reverse.

{¶2} On March 9, 2008, a fire damaged a house owned by Hoffman located at 312 Andrews Court in Marion, Ohio. (D's Ex. 1); (Oct. 22, 2009 Tr. at 7, 27).

{¶3} On February 10, 2009, Judy Rawlins, the Marion City Zoning Inspector, sent Hoffman a certified letter notifying him that the house, which had not been repaired since the fire, was in violation of Marion City Code Sections 1360.01(A),(C), (F), & (G). (Oct. 22, 2009 Tr. at 6-8, 13); (P's Ex. A). Rawlins informed Hoffman that the house was a nuisance and, if he failed to repair the house or take other appropriate remedial action within sixty (60) days, the City would demolish it. (Oct. 22, 2009 Tr. at 6-8); (P's Ex. A).

{¶4} On April 27, 2009, Rawlins inspected the house and filed a report noting that Hoffman had failed to take remedial action and was past the sixty-day deadline. (D's Ex. 1); (Oct. 22, 2009 Tr. at 15, 20).

{¶5} On May 13, 2009, Rawlins filed a complaint in the Marion Municipal Court alleging that Hoffman was in violation Marion Municipal Code

Section 1360.99 by failing to abate the nuisance; to wit: the fire-damaged house at 312 Andrews Court. (Doc. No. 1); (Oct. 22, 2009 Tr. at 23).

{¶6} On June 2, 2009, Hoffman entered a written plea of not guilty to the violation. (Doc. No. 4). A pre-trial hearing was scheduled for June 22, 2009, and, thereafter, trial was set for October 1, 2009. (Doc. Nos. 5, 8). Trial was later rescheduled for October 22, 2009. (Doc. No. 9).

{¶7} On August 13, 2009, Hoffman and the City entered into an "agreement," which provided the following:

> **This agreement reached on this 13th day of August 2009[] between Tom and Dorothy Hoffman owners of the property at 312 Andrews Ct. and the City of Marion.**
>
> **Hoffman's agree to release and forfeit $250.00 of any monies being held by the City for the remediation of the property located at 312 Andrews Ct. and related to the civil matter. This does not include any costs involved with the criminal side.**
>
> **In addition, Hoffman's agree to and will provide verification that the property will be demolished and upon obtaining the proper permits the land cleared of all debris and graded and reseed and sewer inspected by City Engineers within 45 days. [T]he city engineer will promptly inspect on the same day or the next day after first being called by Mr. Hoffman.**
>
> **In exchange the City will dismiss any civil and criminal actions now pending.**

(D's Ex. 4); (Oct. 22, 2009 Tr. at 31, 39, 48). The document was signed by Tom and Dorothy Hoffman but not signed by the City prosecutor. (D's Ex. 4.).

{¶8} On September 14, 2009, the City zoning inspector issued a permit for the demolition of 312 Andrews Ct. to Randy Kramer (hereinafter "Kramer"), Hoffman's contractor. (D's Ex. 3); (Magistrate's Decision, Doc. No. 18). On October 1, 2009, Hoffman purchased grass seed for Kramer to reseed the property. (D's Ex. 5); (Oct. 22, 2009 Tr. at 41, 44). The post-demolition sewer inspection was completed on October 2, 2009. (D's Ex. 3); (Magistrate's Decision, Doc. No. 18); (Oct. 22, 2009 Tr. at 20).

{¶9} On October 22, 2009, a trial on the complaint proceeded before a magistrate. The magistrate allowed Hoffman to present evidence at trial that he complied with the August 13th agreement. The City objected to the presentation of this evidence on the basis that it was an offer of compromise and irrelevant as to whether Hoffman violated the Marion Municipal Code. (Oct. 22, 2009 Tr. at 31-38). At the close of the evidence, the magistrate took the matter under advisement and allowed the parties to submit post-trial briefs on the relevancy and affect of the August 13th agreement that was admitted into evidence. (Id. at 67-68); (Magistrate's Order, Doc. No. 11).

{¶10} On November 16, 2009, Hoffman filed a motion for leave to file a motion to dismiss with the trial court. (Doc. No. 13). On November 17, 2009, the trial court granted the motion for leave, and Hoffman filed his motion to dismiss that same day. (Doc. Nos. 14-15).

{¶11} On December 10, 2009, the magistrate issued a decision finding that the agreement was properly admitted over the City's objections and recommending that the trial court dismiss the complaint against Hoffman because he detrimentally relied upon the agreement. (Doc. No. 18).

{¶12} On December 15, 2009, the City filed its objections to the magistrate's decision. (Doc. No. 19). On February 16, 2010, the trial court overruled the objections, adopted the magistrate's recommendation, and dismissed the complaint against Hoffman. (Doc. Nos. 20-21).

{¶13} On February 25, 2010, the City filed a notice of appeal. (Doc. No. 22). The City now appeals raising one assignment of error for our review.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY DISMISSING THE CHARGES BASED UPON INAPPLICABLE LEGAL CONCEPTS.**

{¶14} In its sole assignment of error, the City argues that the trial court erred in dismissing the complaint against Hoffman by relying upon *Santobello v. New York* (1971), 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, which it argues is inapplicable here since Hoffman did not enter a plea of guilty. Hoffman, on the other hand, argues that the trial court did not err by relying upon *Santobello*. Hoffman also contends that the City was in breach of the agreement, and the City's promise to dismiss the complaint should be upheld since he fulfilled the

terms of the agreement. We conclude that the trial court did err in dismissing the complaint against Hoffman.

{¶15} The procedural posture of this case merits some discussion. At trial, Hoffman asserted his purported compliance with the terms of the parties' agreement to settle as an affirmative defense. (Oct. 22, 2009 Tr. at 4). Although the City objected to the relevance[1] of the agreement to the merits of the case, the City did acknowledge that the parties had an "agreement" and admitted that the complaint should be dismissed *if* Hoffman complied with the terms of the agreement. (Id. at 31, 36-37). Alternatively to its relevance argument, the City asserted that Hoffman had not complied with the terms of the agreement. (Id. at 35). After hearing the evidence, the magistrate took the matter under advisement and allowed the parties to file post-trial briefs on the relevance and effect of the parties' agreement. (Id. at 67-68). Several days after the trial, the trial court granted Hoffman leave to file a motion to dismiss, and the trial court apparently[2] granted this motion in order to dismiss the complaint. (See Doc. Nos. 13-14, 18, 20-21). In light of this unique procedural history, it appears as though the trial court treated the trial on the merits as a quasi-evidentiary/motion hearing for

---

[1] Although the City objected to the relevance of the purported agreement at trial, the City failed to object to the magistrate's decision on this basis; and therefore, has waived all but plain error related to the admission of this evidence for purposes of appeal. Civ.R. 53(D)(3)(b)(iv). The City has not argued plain error with respect to the trial court's admission of this evidence on appeal.

[2] We say "apparently" because neither the magistrate nor the trial court references the motion to dismiss in their decision or judgment entry, respectively. (See Doc. Nos. 18, 20-21).

purposes of reviewing Hoffman's subsequently filed motion to dismiss.

{¶16} Therefore, this appeal stems from the trial court's decision to dismiss a complaint after hearing evidence regarding an alleged breach of an agreement between the prosecution and a criminal defendant. In order to reach its decision, the trial court made both factual and legal determinations. As an appellate court, we must defer to the trial court's findings of fact *if* they are supported by competent, credible evidence. *State v. Stanley*, 7th Dist. No. 99-C.A.-55, 2002-Ohio-3007, ¶39, citing *State v. Williams* (1986), 23 Ohio St.3d 16, 19, 490 N.E.2d 906 and *State v. Rossiter* (1993), 88 Ohio App.3d 162, 166, 623 N.E.2d 645. However, we review the trial court's conclusions of law de novo. Id., citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. See, also, *State v. Johnson*, 2010 Ark. 77, 2010 WL 565243.

{¶17} Agreements[3] between the prosecution and a suspect, an accused, or a criminal defendant[4] are reviewed using general principles of contract law. *State v. Small* (1987), 41 Ohio App.3d 252, 255, 535 N.E.2d 352; *Stanley*, 2002-Ohio-3007, at ¶50; *State v. Reimsnyder II* (May 2, 1997), 6th Dist. No. E-96-006, at *11; *State v. Crosby* (Apr. 25, 1995), 5th Dist. No. 93-CA-57, at *2. A trial court's

---

[3] The cases cited herein involve non-prosecution agreements (a.k.a. cooperation agreements or cooperation-immunity agreements) or *informal* immunity agreements. While we recognize that the agreement here is neither a non-prosecution agreement nor an *informal* immunity agreement, we believe that the agreement is analogous to those types of agreements for purposes of this case.

[4] Whether one is a suspect, an accused, or a criminal defendant depends upon when the agreement is made.

decision to dismiss a criminal case as a remedy for the prosecution's breach of such an agreement is reviewed for an abuse of discretion. *U.S. v. Johnson* (C.A. 8, 1988), 861 F.2d 510, 512, citing *Santobello*, 404 U.S. at 263; *Com. v. Sluss* (1999), 14 Va.App. 601, 606, 419 S.E.2d 263; *State v. Lummus* (1989 Iowa App.), 449 N.W.2d 95, 96. See, also, *State v. Busch* (1996), 76 Ohio St.3d 613, 669 N.E.2d 1125 (trial court's decision to dismiss sua sponte under Crim.R. 48(B) is reviewed for an abuse of discretion). An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶130, citations omitted. When applying an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *State v. Herring* (2002), 94 Ohio St.3d 246, 255, 762 N.E.2d 940.

{¶18} With the applicable standard of review in mind, we now examine the evidence presented at trial (or quasi-evidentiary/motion hearing) relevant to the parties' agreement. Hoffman testified that, under the terms of the agreement, he was required to demolish the house, fill in the basement, level the property, and plant grass seed all within forty-five (45) days of signing the agreement. (Oct. 22, 2009 Tr. at 38-39). The parties agreed that the agreement was signed on August 13, 2009. (Id. at 39, 59); (D's Ex. 4). Hoffman admitted, however, that the property had not yet been reseeded and that there were a "couple pieces" of debris

that were "probably" on his property. (Id. at 39). Concerning the debris, Hoffman testified that his contractor, Kramer, was also demolishing the neighbor's house, and Kramer pushed some debris from the neighbor's house onto his property. (Id. at 43). Hoffman also identified defendant's exhibit two (2) as a photograph of the property, which photograph demonstrated that: the house had been demolished, the basement had been filled in, and the property had been *roughly* leveled. (Id. at 42); (D's Ex. 2). However, a stack of straw bales and a pile of debris along the property's back fence were also visible in the picture. (D's Ex. 2).

{¶19} Hoffman's wife, Dorothy, identified defendant's exhibit two (2) as a photograph of 312 Andrews Court that she took the morning before trial (Oct. 22, 2009). (Id. at 54-55). Dorothy further testified that her husband had complied with the terms of the agreement, "other than the grass seed." (Id. at 56-57). Dorothy testified that the agreement required all of the work to be completed within forty-five (45) days after they signed the agreement on August 13, 2009. (Id. at 59). Dorothy, again, admitted that the property had not been reseeded as of the day of the trial, even though the agreement required that the property to be reseeded by the end of September 2009. (Id.).

{¶20} Judy Rawlins, the Marion City zoning inspector, testified that she conducted a further inspection of Hoffman's property the day of or the day before trial. (Id. at 10). Rawlins testified about that inspection as follows:

> **Q:** Now, and as of today I believe, or yesterday, did you conduct an additional inspection --
> **A:** Yes.
> **Q:** -- of the property? And there's been some testimony that the property -- that the structure's now been demolished, is that true?
> **A:** Yeah.
> **Q:** But are there other matters that still remain to be done with this property?
> **A:** As part of our demolition specs, I believe it's Part G on that first page, it's how they have to grade the property, make sure any other debris has been removed, no rutting, it needs to be seeded.
> **THE COURT:** I'm sorry, would you repeat that last statement?
> **A:** That it needs to be seeded.
> **THE COURT:** Okay.
> **Q:** And that hasn't been done, has it?
> **A:** No, they've been working on the grading it appears, but it's not totally done. [T]here's still some piles of debris towards the back of the lot.
> **Q:** So, as of April 27th there have been [sic] no demolition whatsoever, and as of today there's still additional items that remain to be done to be in full compliance, is that correct?
> **A:** Yes.

(Id. at 10-11).

{¶21} After reviewing the evidence, we conclude as a matter of law that Hoffman materially breached the agreement by failing to *completely* level the property, remove all debris, and reseed the property within forty-five (45) days after the agreement was signed. *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.*, 177 Ohio App.3d 7, 19, 893 N.E.2d 855, quoting *Luntz v. Stern* (1939), 135 Ohio St. 225, 237, 20 N.E.2d 241 ("when the facts presented in a case are

undisputed, whether they constitute performance or a breach of the contract, is question of law for the court.").

**{¶22}** Generally, the time of performance is not of the essence. *Brown v. Brown* (1993), 90 Ohio App.3d 781, 784, 630 N.E.2d 763, citing *Lake Ridge Academy v. Carney* (Oct. 16, 1991), 9th Dist. No. 91CA005063, at \*10, citing *Kirby v. Harrison* (1853), 2 Ohio St. 326. Some courts have found that time is of the essence when a contract specifies a date for performance. *Domigan v. Domigan* (1933), 46 Ohio App. 542, 546, 189 N.E. 860; *Lindamood v. Clark* (June 18, 1981), 2nd Dist. No. CA-7123; *Newman v. Hurni* (Dec. 30, 1993), 6th Dist. No. 92WM000022; *Calabrese v. Vukelic* (Dec. 14, 1995), 7th Dist. No. 94-J-37. *But see Brown*, 90 Ohio App.3d at 785. Furthermore, the nature of the contract itself or the circumstances under which it was negotiated can make time of the essence. *Brown*, 90 Ohio App.3d at 784, citing *Lake Ridge Academy*, supra; *Green, Inc. v. Smith* (1974), 40 Ohio App.2d 30, 317 N.E.2d 227; *Juratovac v. Gerl* (Oct. 2, 1980), 8th Dist. No. 41841. See, also, *Wilson v. Uwaydah*, 3d Dist. No. 15-01-19, 2002-Ohio-2735, ¶18, citing *Stults & Associates, Inc. v. United Mobile Homes, Inc.* (Oct. 14, 1998), 3d Dist. No. 9-97-66. When time is of the essence, any delay in performance is generally viewed as a material breach. See, e.g., *Klausing v. Chef Solutions, Inc.,* 3d Dist. No. 1-07-34, 2007-Ohio-6014, ¶7,

citing *Morton Bldgs., Inc. v. Correct Custom Drywall, Inc.*, 10th Dist. No. 06AP-851, 2007-Ohio-2788, ¶30.

**{¶23}** Here, the agreement not only specified that performance be completed within forty-five (45) days after Hoffman signed the agreement, the nature and circumstances under which the agreement was formed indicates that time *was* of the essence. At its core, the agreement provided that the prosecutor would dismiss the complaint against Hoffman and forgo trial if Hoffman abated the nuisance at 312 Andrews Court. (D's Ex. 4). Although the trial was not actually held until October 22, 2009, when the parties negotiated the agreement on August 13, 2009, trial was set for October 1, 2009. (Doc. No. 8). September 27, 2009 was forty-five (45) days after the agreement was signed, which is only a few days prior to the originally scheduled trial date. Under these circumstances, we find that time was of the essence and, as such, Hoffman's failure to perform within the agreement's specified time period was a material breach. Aside from Hoffman's admitted failure to perform within the time period provided by the agreement, Hoffman failed to perform even after the date for performance passed, but prior to the date of trial (24 days later). As such, Hoffman not only failed to perform on time, he frustrated the essential purposes of the agreement—to abate the nuisance, avoid trial, and settle the case—and therefore, Hoffman has not substantially performed. *Hansel v. Creative Concrete & Masonry Constr. Co.*, 148

Ohio App.3d 53, 2002-Ohio-198, 772 N.E.2d 138, ¶12 ("For the doctrine of substantial performance to apply, the part unperformed must not destroy the value or purpose of the contract."). Hoffman's material breach of the agreement nullifies the prosecution's agreement to dismiss the charges and forgo prosecution. *Small*, 41 Ohio App.3d at 255, citing *U.S. v. Wood* (C.A. 11, 1986), 780 F.2d 929, cert. denied, (1986), 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48; *U.S. v. Castaneda* (C.A. 5, 1998), 162 F.3d 832, 836; *U.S. v. Fitch* (C.A. 6, 1992), 964 F.2d 571, 575; *U.S. v. Brown* (C.A. 8, 1986), 801 F.2d 352, 354.

{¶24} Both the magistrate and the trial court implicitly acknowledged in their decisions that Hoffman failed to comply with the terms of the agreement but found that the City should, nonetheless, be bound by its promise to dismiss the complaint because of Hoffman's detrimental reliance. (Doc. Nos. 18, 20). We disagree.

{¶25} To begin with, Hoffman's failure to comply with the terms of the agreement amounted to a material breach of the agreement for the reasons aforementioned. Detrimental reliance is an element of the equitable doctrine of promissory estoppel. See, e.g., *Karnes v. Doctors Hosp.* (1990), 51 Ohio St.3d 139, 142, 555 N.E.2d 280. Estoppel, however, may be nullified if the party asserting it has "unclean hands." *Collins v. Moran*, 7th Dist. No. 02 CA 218, 2004-Ohio-1381, ¶21. "The maxim, 'he who comes into equity must come with clean

- 13 -

hands,' requires only that the [party invoking equity] must not be guilty of reprehensible conduct with respect to the subject matter of [the] suit." *Marinaro v. Major Indoor Soccer League* (1991), 81 Ohio App.3d 42, 45, 610 N.E.2d 450, citing *Kinner v. Lake Shore & M.S. Ry. Co.* (1904), 69 Ohio St. 339, 69 N.E. 614, paragraph one of the syllabus. Hoffman as the breaching party did not have clean hands. To force the City, the non-breaching party, to dismiss the complaint when it was denied the benefit of its bargain—the abatement of the nuisance, forgoing trial, and settling the case—is inequitable.

{¶26} Additionally, the trial court's finding that Hoffman *detrimentally* relied upon the City's promise to dismiss the complaint is not supported by competent, credible evidence and is contrary to law. As an initial matter, Hoffman did not enter a plea of guilty thereby giving up substantial constitutional rights in reliance upon the prosecution's promise like the defendant in *Santabello*, 404 U.S. 257. Hoffman was afforded all of his constitutional rights and does not claim otherwise on appeal. Furthermore, the record fails to demonstrate *detrimental* reliance. Specifically, the record fails to demonstrate that, but for the City's promise to dismiss the complaint, Hoffman would not have demolished his house. See 4 AMJUR POF2d 641 ("Detrimental reliance is often denoted as a change of position or status * * * that is, his acting or refraining from acting in such a manner and to such an extent as to change his position or status from that which he

would otherwise have occupied."). In fact, Hoffman testified at trial that his decision to demolish the house was due to the fact that his former tenants, who allegedly incurred damages from the fire, reached an agreement with his insurance company to seek damages equal to or less than Hoffman's liability insurance on the house. (Oct. 22, 2009 Tr. at 49-50). Hoffman explained:

> **There was a lawsuit against me and the liability insurance was handling, I wasn't given a whole lot of information unless I called and asked for it. I did not want to destroy any evidence that could be used to my benefit or their benefit either way. And they're suing me for everything I own. It would be stupid to tear it up. It was still, even when I was done it it [sic] was still stupid to tear it up. When you got a lawsuit pending against you[,] you don't tear up the evidence. But Jay talked to 'em and said that the attorney made some kind of agreement with 'em that it wouldn't run over the amount of liability insurance that I had, that I didn't have to worry about it, go ahead and tear it down.**

(Id.). When the prosecutor insisted that Hoffman agreed to demolish the house only after the complaint was filed, Hoffman disagreed and testified, "[w]hen he told me the liability wouldn't go beyond my liability insurance, that I didn't have to worry about the lawsuit, I agreed to tear it down." (Id. at 50). Hoffman consistently insisted throughout cross-examination that he decided to demolish the house based on the agreement between the parties in the civil suit against him. (Id. at 51, 52). Under these circumstances, Hoffman has not *detrimentally* relied upon the City's promise to dismiss the complaint.

**{¶27}** Finally, the trial court's finding of detrimental reliance is contrary to law. "Estoppel cannot be based upon a promise which only induces the promisee to do that which he is already legally bound to do." *Northern State Const. Co. v. Robbins* (1969), 76 Wash.2d 357, 362, 457 P.2d 187, citing *Western Land Ass'n of Minnesota v. Banks* (1900), 80 Minn. 317, 83 N.W. 192; 28 Am.Jur.2d Estoppel and Waiver (1966) §77; and 31 C.J.S. Estoppel (1964) §72. See, also, *Prentice v. UDC Advisory Services, Inc.* (1995), 271 Ill.App.3d 505, 514, 648 N.E.2d 146; *Barnett v. Kemp* (1914), 258 Mo. 139, 167 S.W. 546, 551; *Pirkey v. Williams* (C.A. D.C. 1917), 45 App.D.C. 590, 593-94. According to the city zoning inspector, Marion City Code required Hoffman to "grade the property, make sure any other debris has been removed, no rutting, it needs to be seeded" in addition to simply demolishing the house to abate the nuisance. (Oct. 22, 2009 Tr. at 11). Since Hoffman was already legally obligated to perform the actions agreed to, the trial court's use of equitable estoppel was contrary to law in this case.

**{¶28}** For all these reasons, we find that the trial court abused its discretion by dismissing the complaint against Hoffman. The City was not required to fulfill its promise to dismiss the complaint since Hoffman materially breached the agreement. Furthermore, the trial court's finding of detrimental reliance is not supported by competent, credible evidence and is contrary to law *in this case*.

That being said, nothing in this opinion should be construed as limiting the trial court's discretion to do substantial justice with regard to its sentence in this case.

**{¶29}** The City's assignment of error is, therefore, sustained.

**{¶30}** Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ROGERS and SHAW, J.J., concur.**

**/jlr**