[Cite as *Betts v. Betts*, 2013-Ohio-1938.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY**

STEPHEN C. BETTS,

    PLAINTIFF-APPELLANT,          CASE NO.  5-12-33

    v.

JULIE A. BETTS,                O P I N I O N

    DEFENDANT-APPELLEE.

**Appeal from Hancock County Common Pleas Court
Domestic Relations
Trial Court No. 2009 DR 285**

**Judgment Reversed and Cause Remanded**

**Date of Decision:   May 13, 2013**

**APPEARANCES:**

    *William E. Clark* **for Appellant**

    *Craig M. Witherell*  **for Appellee**

**ROGERS, J.**

{¶1} Plaintiff-Appellant, Stephen Betts ("Stephen"), appeals the judgment of the Hancock County Court of Common Pleas, Domestic Relations Division, setting aside an amendment (the "Amendment") to his Separation and Property Settlement Agreement (the "Agreement") with Defendant-Appellee, Julie Betts ("Julie"). On appeal, Stephen argues that the trial court erred by: (1) not finding that Julie ratified the terms of the Amendment through her conduct; (2) failing to restore the parties to their pre-Amendment positions; and (3) finding that the Amendment was unenforceable since Julie agreed to it while under duress. For the reasons that follow, we reverse the trial court's judgment.

{¶2} This matter stems from the parties' divorce in December 2009. As part of the divorce, the parties entered into the Agreement, which was incorporated into their divorce decree. The Agreement allocated the ownership of five life insurance policies in which Stephen was the insured life. Pursuant to the Agreement, Stephen was required to transfer the ownership of three of the life insurance policies to Julie, including a Prudential Policy with a death benefit of $250,000.00 (the "Prudential Policy"). Meanwhile, Stephen was allowed to retain ownership of the other two policies, including a John Hancock Policy with a death benefit of $50,000.00 (the "John Hancock Policy"). The policies that remained in Stephen's possession listed the couple's children as the primary beneficiaries while the policies in Julie's possession named her as the primary beneficiary. The

Agreement also included a provision allowing the parties to amend it as long as any amendment was in writing and signed by both parties.

**{¶3}** In December 2011, Julie began to face significant financial difficulties. Shortly after the onset of these difficulties, Julie and Stephen executed the Amendment on February 3, 2012, which amends the Agreement's provisions regarding the ownership of the life insurance policies. The Amendment includes the following relevant sections:

> A. [Julie] shall transfer the ownership of the Prudential [Policy] [b]ack to [Stephen].
>
> B. [Stephen] shall name [his children] as the irrevocable primary beneficiary of the first $60,000 of the death benefit of said policy. [Julie] shall be named as the irrevocable primary beneficiary of the balance of the death benefit of said policy.
>
> * * *
>
> D. [Stephen] shall pay off the current loans on the [policies] wherein [Julie] is named beneficiary within 3 years of this Amendment and agrees not to borrow additional funds from any life insurance policy which names [Julie] as a beneficiary.
>
> E. [Stephen] shall immediately transfer the ownership of the John Hancock [Policy] to [Julie]. [Stephen] shall pay premiums on said policy at the current premium level. [Julie] shall be responsible to pay immediately when due all loan repayments and interest payments.
>
> F. [Julie] shall irrevocably name herself as the primary beneficiary on said policy * * *. (Plaintiff's Exhibit "A," p. 2).

**{¶4}** On May 31, 2012, Stephen filed a motion to enforce the Agreement since Julie failed to comply with her responsibilities under the Amendment. Julie

responded by filing a motion to set aside the Amendment on the basis that she was under duress at the time of its execution. On September 7, 2012, the trial court conducted a hearing regarding the competing motions.

{¶5} On November 15, 2012, the trial court granted Julie's motion and set aside the Amendment on the basis of its finding that Julie was under duress at the time of the Amendment's execution. In finding duress, the trial court applied the following burden of proof:

> To obtain relief from the agreement by way of a duress defense [Julie] must prove by the greater weight of the evidence that [Stephen's] conduct wrongfully caused her to do an act she was not bound to do and would not otherwise have done. Duress takes into consideration the state of health, mental and physical capacity * * *, and the [parties'] relationship * * *, and all the facts and circumstances in evidence. To find duress the Court must conclude [Julie] was wrongfully deprived of her freedom of choice and was compelled against her will to sign the agreement. (Internal citations omitted.) (Docket No. 72, p. 5).[1]

{¶6} Stephen timely appealed from this judgment, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT ERRED BY NOT FINDING THE DEFENDANT/APPELLEE, BY HER ACTIONS, RATIFIED THE TERMS AND CONDITIONS OF THE FEBRUARY 3, 2012 AMENDMENT TO THE ORIGINAL SEPARATION AND PROPERTY SETTLEMENT AGREEMENT AND IS THEREFORE BOUND TO THE TERMS AND CONDITIONS OF THE FEBRUARY 3, 2012 AMENDMENT.**

---

[1] The trial court cited the Ohio Jury Instructions ("OJI") regarding the burden of proof for duress. However, we note that the sections cited in the trial court's judgment entry have been amended and renumbered.

*Assignment of Error No. II*

**THE TRIAL COURT FAILED TO RESTORE THE PARTIES TO THE POSITIONS THEY WERE IN PRIOR TO THE EXECUTION OF THE FEBRUARY 3, 2012 AMENDMENT TO THE ORIGINAL SEPARATION AND PROPERTY SETTLEMENT AGREEMENT DATED DECEMBER 9, 2009.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED IN FINDING THAT THE FEBRUARY 3, 2012 AMENDMENT TO THE ORIGINAL SEPARATION AND PROPERTY SETTLEMENT AGREEMENT WAS UNENFORCEABLE DUE TO IT BEING EXECUTED BY DEFENDANT/APPELLEE WHILE UNDER DURESS CAUSED BY PLAINTIFF/APPELLANT, WHICH WAS SUFFICIENT TO MEET THE GREATER WEIGHT OF EVIDENCE BURDEN.**

**{¶7}** Since we find that the third assignment of error is dispositive to this appeal, we elect to address the assignments of error out of order.

*Assignment of Error No. III*

**{¶8}** In his third assignment of error, Stephen argues that the trial court erred in setting aside the Amendment on the grounds that Julie was under duress at the time of its execution. Because the trial court applied an improper burden of proof, we agree with Stephen.

*Standard of Review*

**{¶9}** A trial court's decision regarding the enforcement of a settlement agreement is reviewed for an abuse of discretion. *Schneider v. Schneider*, 110

Ohio App.3d 487, 491 (11th Dist. 1996). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 17-18. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Duress*

{¶10} Under Ohio law, a property settlement agreement incorporated into a divorce decree is subject to the precepts of contract law. *Troha v. Troha*, 105 Ohio App.3d 327, 333 (2d Dist. 1995). To establish that a contract is void as the product of duress, a party must show "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Gabel v. Gabel*, 3d Dist. No. 9-04-13, 2004-Ohio-4292, ¶ 19, quoting *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246 (1990). The Supreme Court of Ohio further outlined the scope of duress in *Tallmadge v. Robinson*, 158 Ohio St. 333 (1952), as follows:

> The courts * * * seek to determine whether the threats were such as to have overcome the will of the person threatened and to have created a state of mind such that he was induced to do an act which he would not otherwise have done and which he was not bound to do. The real and ultimate fact to be determined in every case is whether the party affected really had a choice; whether he had his freedom of exercising his will. *Id*. at 340.

-6-

{¶11} In performing this analysis, courts are instructed to consider "the age, * * * health, and mental condition of the person affected, the relationship of the parties and all the surrounding circumstances * * *." *Id*. at paragraph two of the syllabus. While the above circumstances are relevant, "mere regret at an unwise decision does not establish duress, coercion, fraud or overreaching." *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 470 (1994); *see also Murray v. Murray*, 6th Dist. No. L-09-1305, 2011-Ohio-1546, ¶ 26 (stating that "[d]issatisfaction with or general remorse about signing a[n agreement] do[es] not * * * constitute 'duress'"). Additionally, "[i]t is not enough to show that one assented merely because of difficult circumstances *that are not the fault of the other party*." (Emphasis added.) *Blodgett* at syllabus; *see also Gallaher Drug Co. v. Robinson*, 13 Ohio Misc. 216, 218 (M.C. 1965) ("The fear of some impending peril or financial injury, or the mere fact that one acts with reluctance or that a person is in a mental state of perturbation at the time of any act is not sufficient ground for holding that the act was done under duress.").

### *Burden of Proof for Duress*

{¶12} Under Ohio law, written instruments generally receive special, favored status. *See Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000) (stating that the purpose of the parol evidence rule is to "ensure the stability, predictability, and enforceability of finalized written instruments"); 11 *Williston on Contracts*,

Section 33:4, at 541-48 (4th Ed.1999) (stating that written instruments have historically received "legal preference, if not the talismanic legal primacy"). In light of this favored status, Ohio courts have typically required clear and convincing evidence to set aside a written instrument. *E.g.*, *Sloan v. Standard Oil Co.*, 177 Ohio St. 149 (1964), paragraph one of the syllabus (requiring that party seeking rescission of a release prove mutual mistake by clear and convincing evidence); *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph two of the syllabus (requiring that party seeking to rescind contract on the basis of fraudulent misrepresentation must carry burden by clear and convincing evidence); *Gartell v. Gartell*, 181 Ohio App.3d 311, 2009-Ohio-1042, ¶ 30 (5th Dist.) ("The burden of proving unilateral mistake is on the party seeking rescission and must be met by clear and convincing evidence."); *Takis, L.L.C. v. C.D. Morelock Properties, Inc.*, 180 Ohio App.3d 243, 2008-Ohio-6676, ¶ 29 (10th Dist.) (stating that "the party must prove the fraud by clear and convincing evidence"); *Escott v. Timken Co.*, 153 Ohio App.3d 529, 2003-Ohio-3370, ¶ 11 (5th Dist.) ("It is well established that a party seeking to void a contract on grounds of incapacity has the burden of proof by clear and convincing evidence."). This common trend has been similarly observed in actions involving the enforceability of separation agreements. *E.g.*, *In re Sertz v. Sertz*, 11th Dist. No. 2011-L-063, 2012-Ohio-2120, ¶ 39 (reviewing whether party seeking to set aside separation agreement on the basis of fraud

carried her burden by clear and convincing evidence). We have previously summarized this common trend as follows:

> Ohio courts have not undertaken to lay down any general rule for the determination of the issues or matters that must be proved by "clear and convincing" evidence. This requirement seems for the most part to be confined to cases wherein the claim made, or the defense asserted, is contrary to the natural and reasonable inference, especially where a claim is made to defeat or modify the plain provisions of a written instrument. (Internal quotation omitted.) *Appeal of Single County Ditch No. 1537*, 46 Ohio App.3d 4, 5 (3d Dist. 1988).

{¶13} When considering matters in which a party seeks to set aside an agreement on the basis of duress, Ohio courts have adopted divergent views regarding the appropriate burden of proof. For instance, in *ComDoc v. Advance Print Copy Ship Ctr.*, 9th Dist. No. 24212, 2009-Ohio-2998, the Ninth District merely required that a party claiming duress prove its existence by a preponderance of the evidence. *Id.* at ¶ 23. The court's reasoning stemmed from its recognition that duress is listed as an affirmative defense in Civ.R. 8(C), and that the general burden of proof for affirmative defenses is preponderance of the evidence. *Id.* Other courts have followed the common trend discussed above and required proof by clear and convincing evidence. *E.g.*, *DiPietro v. DiPietro*, 10 Ohio App.3d 44 (10th Dist. 1983), paragraph one of the syllabus ("In order for a party to show that he was incompetent at the time he entered into a separation agreement, he must prove, by clear and convincing evidence, that the separation agreement was executed while he was * * * under * * * duress."); *see also*

*Dubinsky v. Dubinsky*, 8th Dist. Nos. 66439, 66440 (Mar. 9, 1995) (same). We agree with those courts that follow the common trend.

**{¶14}** The Ohio Supreme Court has not clearly weighed in on the appropriate burden of proof for a showing of duress. However, it did hint in *Standard Sanitary Mfg. Co. v. George*, 118 Ohio St. 564 (1928), that it requires a party to prove duress by clear and convincing evidence. There, the court reversed the appellate court's finding that the defendant was under duress at the time of the contract's execution because she "failed to sustain any degree of burden of proof * * *." *Id*. at 573. In its original opinion, the court stated the duress could not "have been established by even a preponderance of the evidence, much less by clear and convincing evidence * * *." *Id*. at 569. On rehearing, the court considered additional facts placed into the record and reached the same result, noting that the new evidence, combined with the original record, did not "amount to clear and convincing proof" that duress existed. *Id*. at 575. Based on the court's amended opinion after rehearing, it manifestly signaled that clear and convincing evidence is required to sustain a finding of duress. *See also Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, ¶ 23 (requiring clear and convincing evidence to justify imposition of constructive trust, which can only be granted where there is a showing of fraud, *duress*, other unconscionable conduct).

Absent any contrary indication by the court, we are compelled to follow its guidance in *Standard Sanitary* and not the Ninth District's view in *ComDoc*.[2]

{¶15} Our precedent bolsters our conclusion here that clear and convincing evidence is required to set aside a contract on the basis of duress. In *Matter of Adoption of Fleming*, 3d Dist. No. 6-94-11 (Jan. 5, 1995), we addressed a situation in which a parent alleged that she signed a written consent to adoption under duress. There, we found that the parent "was required to offer 'clear and convincing' evidence" of her alleged duress. *Id.* Due to the similarities between a written consent to adoption and a contract, we believe that our precedent requires the same finding here.

{¶16} Based on the Supreme Court's guidance, the courts' typical treatment of defenses seeking to entirely avoid contractual obligations, and our own precedent, we find that a party seeking to set aside a contract must show duress by clear and convincing evidence. Here, the trial court merely required that Julie show the existence of duress by a preponderance of the evidence. The application of such a burden of proof was contrary to law and amounted to an abuse of discretion. As such, we reverse the trial court's judgment and remand this matter

---

[2] The Ninth District's opinion in *ComDoc* relied on the Ohio Supreme Court's decision in *Ohio Loan & Disc. Co. v. Tyarks*, 173 Ohio St. 564 (1962). However, a review of *Ohio Loan* reveals that the Court merely placed the burden of proving an affirmative defense on the party that asserts it. *Id.* at 568. There is no indication that the Court sought to require proof of all affirmative defenses merely by a preponderance. Further, we note that the Ninth District has also required clear and convincing evidence for a finding of duress in at least one pre-*ComDoc* case. *E.g.*, *Pakeeree v. Pakeeree*, 9th Dist. No. 15186 (Mar. 11, 1992) ("In order to prove that she was incompetent to contract at the time she entered into the Separation Agreement, Wife was required to prove, by clear and convincing evidence, that she was mentally incompetent or under the influence of fraud, undue influence, or duress.").

for the trial court to properly apply the clear and convincing evidence standard to the evidence adduced in this matter.

{¶17} Accordingly, we sustain Stephen's third assignment of error.

*Assignments of Error Nos. I & II*

{¶18} Our resolution of the third assignment renders the first and second assignments of error moot and we decline to address them. *See* App.R. 12(A)(1)(c).

{¶19} Having found error prejudicial to Stephen, in the particulars assigned and argued in the third assignment of error, we reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

***Judgment Reversed and***
***Cause Remanded***

**WILLAMOWSKI and \*\*YARBROUGH, J.J., concur.**

**/jlr**

**\*\* JUDGE STEPHEN YARBROUGH sitting by assignment from the Sixth District Court of Appeals**