[Cite as *State v. Weaver*, 2015-Ohio-3610.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

STATE OF OHIO                               :

                                              :   Appellate Case No. 26460

      Plaintiff-Appellee                    :

                                              :   Trial Court Case No. 13-CR-1415

v.                                          :

                                              :   (Criminal Appeal from

CURTIS W. WEAVER                            :    Common Pleas Court)

                                              :

      Defendant-Appellant                   :

                                              :

                                              :

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of September, 2015.

. . . . . . . . . .

MATHIAS H. HECK, JR., by DYLAN SMEARCHECK, Atty. Reg. No. 000085249, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

CANDI S. RAMBO, Atty. Reg. No. 0010324, Post Office Box 66, Springboro, Ohio 45066
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

    **{¶ 1}** Curtis Weaver, defendant-appellant, appeals from his conviction and

sentence for Theft, a felony of the fifth degree. Weaver contends that the trial court erred by denying his request to be returned to a diversion program he was on, because the trial court's factual finding that he violated the terms of his diversion agreement is against the manifest weight of the evidence. He also contends that his trial counsel provided ineffective assistance by failing to advise him regarding his ability to request intervention in lieu of conviction.

{¶ 2} We conclude that the trial court did not err in finding that Weaver was not entitled to enforce the terms of the diversion agreement, and that Weaver did not demonstrate that he was prejudiced by his counsel's failure to request intervention in lieu of conviction. Therefore, the judgment of the trial court will be Affirmed.

## I.  Course of Proceedings

{¶ 3}  In 2013, Weaver was charged with one count of Theft, a felony of the fifth degree, but the prosecution was suspended based on a "diversion division contractual agreement" entered into by Weaver and the Montgomery County Prosecutor. In the written contract, Weaver agreed to perform specific conditions, including:

1. I will refrain from any further criminal activity during my supervision period and notify my Diversion Officer the next business day if I have been arrested, questioned or charged with a new offense by any law enforcement officer. I will further notify my Diversion Officer if I am named as a defendant, victim or a witness in a criminal or civil case.

2. I will provide my Diversion Officer with complete and truthful information at all times. If requested I will undergo a polygraph examination. I must

pass to be continued on Diversion.

3. I will keep all of my scheduled appointments and telephone contacts as instructed by my Diversion Officer.

4. I will testify truthfully against any co-defendant(s) in my case if requested to do so.

5. I will submit to urinalysis testing if requested by my Diversion Officer. If the test detects any illegal substances, I may be terminated from the Diversion Program unsuccessfully.

6. I agree to pay a non-refundable $150.00 fee for supervision services to Montgomery County Prosecutor's Diversion Program at the time of my acceptance. If my Officer permits me to pay the service fee in installments, I will abide by the payment schedule that is established.

7. I agree to repay the victim the total sum of $ To be Determined, as listed in the attached restitution section of this Agreement.

8. I will satisfactorily perform forty (40) hours of community service work at a non-profit organization within the first six (6) months of supervision. I understand that all work performed will be performed at my own risk. I agree that the Montgomery County Prosecutor's Office, the Board of County Commissioners of Montgomery County and their employees will have no liability to me, my spouse or my children or my successors, heirs and assigns for any injuries I may sustain in the performance of this task.

* * *

**{¶ 4}** The contract contains six more performance obligations, followed by a statement of the Prosecutor's obligations under the contract terms as follows:

The Prosecutor agrees to the following provided the above conditions have been met by the Client:

1. The Prosecutor will suspend the prosecution of this case.

2. The Prosecutor will dismiss this case with prejudice upon successful completion of the Diversion Program on Pre-indictment cases, which means that the charge(s) is permanently dismissed. On Post-Indictment cases, a Nolle Prosequi will be filed vacating the indictment.

**{¶ 5}** The final provision of the diversion contract required Weaver to agree that:

I understand if I violate any of the above conditions; provide false or misleading information to my Diversion Officer or choose to voluntarily withdraw my participation, my case will be terminated from the Diversion Program. The original charge against me will either be forwarded to a Montgomery County Grand Jury for consideration of an indictment and possible criminal prosecution, or returned to the Court for full prosecution.

**{¶ 6}** Neither the contract, nor the statute, R.C. 2935.36, requires a verbal or written notification to a defendant when the contract is terminated, or any notice of the grounds for the termination.  If not verbally advised, a defendant would learn of the termination when he or she is notified of the indictment, or is served with a warrant on indictment.  The record reflects that an indictment was issued by the Grand Jury in February 2014 to prosecute Weaver for the theft offense that was the basis of his diversion contract.

**{¶ 7}** On August 12, 2014, Weaver filed a motion to return to diversion. The trial court conducted an evidentiary hearing on the motion on September 10, 2014. At the hearing, the trial court required Weaver to meet a burden of proof to establish by the preponderance of the evidence that the State abused its discretion in terminating Weaver from diversion. The State presented the testimony of the director of the diversion division and the diversion officer who supervised Weaver during his participation in the diversion program. The diversion officer testified that he only had contact from Weaver twice; first, Weaver sent a fax to verify his completion of 40 hours of community service, and secondly, to ask when the diversion program would end. The diversion officer stated that Weaver did not meet his obligation to perform the community service with a non-profit organization, and Weaver did not notify him when he was accused of complicity to commit shoplifting. For these two reasons, an unsuccessful diversion report was prepared and submitted to the Diversion Director. The diversion officer made his determination that the company where Weaver had volunteered was not a non-profit, based on the letterhead of the document provided by Weaver, without making any other inquiry or investigation. The diversion officer assumed that Weaver had committed the shoplifting offense because he was placed in the diversion program in Warren County, which he assumed required an admission of guilt. The diversion officer did not keep records of any phone calls that Weaver might have made to him, and denied that Weaver ever called to report the shoplifting charge. No attempt was made to contact Weaver to inform him of his deficiencies. The diversion director confirmed that they do not keep records of all phone calls received from participants in the program. When she received the unsuccessful diversion report, she approved the termination, based on Weaver's

most egregious violation – committing another offense. Thereafter, Weaver's case was forwarded to the grand jury.

{¶ 8} Weaver testified that he made numerous attempts to reach the diversion officer the day after the shoplifting incident in Warren County, leaving voicemail messages. Weaver no longer had the phone that he used to make the calls, so he was unable to provide any documentation of the calls. Weaver testified that he continued to call the diversion officer for days after the incident. When the officer finally accepted his call, Weaver testified that the officer simply said, "I have nothing to say to you," and hung up. After Weaver submitted proof of community service, Weaver never had a conversation with the diversion office about whether his community service obligation was met. Weaver explained that the documentation he submitted was signed by Tim Carnahan, who worked for a church and also for a profit-based business. Weaver explained that Carnahan used the business letterhead to verify his community service hours, which were actually performed for the church. Weaver explained that he helped clean the church and its truck, and assisted at events for feeding the homeless. Weaver testified that in connection with his charge of complicity to commit shoplifting, he did not admit his guilt, in order to participate in the diversion program in Warren County. Weaver also testified that he was not involved in the shoplifting incident in Warren County; he was shopping in a different department when the shoplifting took place. This testimony is contradicted by a police report that states Weaver was with the principal offender when the items were removed from the shelf.

{¶ 9} On Sept. 12, 2014, the trial court issued an order denying the motion to return Weaver to the diversion program, based on the findings made at the time of the

hearing. The trial court found that the State met its initial burden by establishing that the reason for the diversion termination was Weaver's involvement in another offense. The trial court found that Weaver did not meet his burden of proving that the State abused its discretion in terminating the diversion contract. The trial court specifically stated that it did not find credible Weaver's testimony that he did not participate in the theft offense in Warren County.

{¶ 10} Weaver was subsequently convicted of Theft, and sentenced accordingly. From his conviction and sentence, Weaver appeals.

## II. Standard of Review

{¶ 11} As discussed below, we conclude that the enforcement or termination of a contract for diversion is controlled by contract law. Ordinarily, the interpretation of a contract is a matter of law and is subject to de novo review.[1] *Saunders v. Mortensen*, 101 Ohio St. 3d 86, 2004-Ohio-24, 801 N.E. 2d 452, ¶ 9. "[W]hen the facts presented in a case are undisputed, whether they constitute a performance or a breach of the contract, is a question of law for the court." *Marion v. Hoffman*, 3d Dist. Marion No. 9-10-23, 2010-Ohio-4821, ¶ 21, citing *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.,* 177 Ohio App.3d 7, 19, 893 N.E.2d 855 (10th Dist. 2008), quoting *Luntz v. Stern*, 135 Ohio St. 225, 237, 20 N.E.2d 241 (1939).

{¶ 12} In the case before us, Weaver has alleged that the trial court's finding that he breached the agreement is against the manifest weight of the evidence. "When a

---

[1] Where the construction of an ambiguous contract requires consideration of extrinsic evidence – e.g., the intent of the parties, custom and usage in the industry – the construction may become a mixed issue of law and fact.

conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 678 N.E. 2d 717 (1983).

## III. The Existence of Grounds for Termination of Diversion
## Is Supported by the Record

{¶ 13}  Weaver's First Assignment of Error asserts:

THE TRIAL COURT COMMITTED PREJUDICAL ERROR IN FINDING THAT THE APPELLANT VIOLATED A TERM OF HIS DIVERSION BECAUSE APPELLEE/STATE OF OHIO FAILED TO PRESENT SUBSTANTIAL EVIDENCE TO SUPPORT ITS CLAIM OF A VIOLATION AND BECAUSE SUCH FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 14}  Weaver argues that the burden of proof should rest on the State, to prove by the preponderance of the evidence that he violated the terms of his diversion contract. We agree that contract law must be applied to determine whether Weaver is entitled to enforce the contract, or whether the State breached the contract by its early termination. "Agreements between the prosecution and a suspect, an accused, or a criminal defendant are reviewed using general principles of contract law."  *Marion v. Hoffman*, 3d

Dist. Marion No. 9-10-23, 2010-Ohio-4821, ¶ 17, citing *State v. Small*, 41 Ohio App.3d 252, 255, 535 N.E.2d 352 (8th Dist. 1987), and *State v. Stanley,* 7th Dist. Mahoning No. 99-CA-55, 2002-Ohio-3007, at ¶ 50; *see also State v. Bethel,* 110 Ohio St. 3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 50. When addressing the rights of the parties arising out of plea agreements, it has been concluded that a court may enforce contract remedies for rescission or specific performance of the terms of the agreement. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed. 2d 427 (1971); *State v. Burks*, 10th Dist. Franklin No. 04AP-531, 2005-Ohio-1262, ¶¶ 18, 21; *State v. Liskany,* 196 Ohio App.3d 609, 2011-Ohio-4456, 964 N.E. 2d 1073, ¶ 190 (2d Dist.). Under contract law, the person who seeks to enforce performance of the agreement has the burden of proving the elements of the claim. To seek specific enforcement based on a breach of contract claim, the movant must prove 1) the existence of an unambiguous contract, and its precise terms, 2) the movant's performance of all material obligations under the contract, 3) non-compliance by the opposing party, and 4) harm caused by the breach that cannot be satisfied with any other legal or monetary remedy. *Beidler v. Davis*, 72 Ohio App. 27, 50 N.E.2d 613 (9th Dist.1943); *Nilavar v. Osborn*, 137 Ohio App.3d 469, 483, 738 N.E.2d 1271 (2d Dist.2000); *Geiger v. Geiger*, 2d Dist. Montgomery No. 13841, 1993 WL 476247 (Nov. 16, 1993*), citing Gleason v. Gleason*, 64 Ohio App. 3d 667, 582 N.E. 2d 657 (4th Dist.1991).

{¶ 15} In the case before us, Weaver moved to be returned to the diversion program on the ground that he had complied with all of his obligations under the terms of the diversion contract. Weaver was seeking specific enforcement of the contract, based on his own compliance, and the State's non-compliance with the contract terms. Upon

filing of the motion, the trial court must set the matter for an evidentiary hearing. *State v. Sneed*, 2d Dist. Montgomery No. 8837, 1986 WL 714 (Jan. 8, 1986). Unless barred by the diversion contract, the State was free to seek an indictment. At the hearing, the burden of proof was on Weaver, the movant seeking to enforce the terms of the contract, to prove all the elements necessary to obtain specific enforcement of the contract. *State v. Pocius*, 11th Dist. Lake No. 92-L-028, 1992 WL 366872 (Dec. 11, 1992). To meet his burden of proof, it was Weaver's responsibility, at the evidentiary hearing, to prove by the preponderance of the evidence,[2] that he complied with all provisions of the diversion contract, and that no grounds existed for the State's termination of that contract. *State v. Pickens*, 109 Ohio App.3d 147, 671 N.E. 2d 1116 (2d Dist. 1996). The evidence in this record permits the trial court to find, as it did, that Weaver did not comply with all contract terms.

{¶ 16} The contract did not require the State to notify Weaver that the contract was being terminated, or specify grounds for termination, before referring the matter to the grand jury. It has been held that when an obligation under the terms of a pre-trial agreement not to prosecute is not satisfied, the State is entitled to consider the contract nullified. *State v. Parris*, 6th Dist. Ottawa No. OT-14-015, 2014-Ohio-4863, ¶ 14. The statute allowing the State to establish discretionary diversion programs, R.C. 2935.36,

---

[2] We note that the higher standard of clear and convincing proof of each element of a claim is generally but not always required when seeking equitable relief, such as specific enforcement or rescission. *See* discussion in *Betts v. Betts*, 3d Dist. Hancock No. 5-12-33, 2013-Ohio-1938, ¶¶ 12-14. However, we continue to follow our precedent in *State v. Pickens*, 109 Ohio App.3d 147, 671 N.E. 2d 1116 (2d Dist. 1996), that specific performance may be ordered when the movant establishes, by the preponderance of the evidence, that a State official has failed to keep its bond or promise, made in his public capacity "as a pledge of the public faith," such that specific performance is the only possible remedy. *See State v. Parris, infra.*

does not require the State to provide any notification of termination of the contract. Therefore, we conclude that the lack of notice did not establish that the State breached its obligations under the contract, or abused its discretion in terminating the contract.

{¶ 17} Weaver contends that he was surprised, at the hearing on his motion, by the State's claims that he had failed to perform his obligations under the contract. But he sought no relief in the trial court, such as a continuance of the hearing to allow him to rebut the State's claims. He has therefore failed to preserve the surprise issue for appellate review.

{¶ 18} Contradictory evidence was presented regarding Weaver's involvement in a theft offense in Warren County and whether Weaver timely contacted his diversion officer after he was cited for complicity to commit theft. The trial court did not find Weaver's version of the events credible. Weaver did not present any testimony from the diversion officer in Warren County, or submit any documentary evidence to support his alleged phone calls to his Montgomery County diversion officer. "Because the fact finder has the opportunity to see and hear the witnesses, substantial deference must be extended to its determinations of credibility." *State v. Ayers*, 2d Dist. Montgomery No. 25563, 2013-Ohio-5337, ¶ 28. The "rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *In re S.A.*, 2d Dist. Montgomery Nos. 25994 & 26001, 2014-Ohio-3063, ¶ 17, citing *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *In re J.Y.*, 2d Dist. Miami No. 07-CA-35, 2008-Ohio-3485, ¶ 33. Based on the diversion officer's testimony, which the trial court

found more credible, the record does support a finding that Weaver violated the terms of the diversion contract by failing to timely notify his diversion officer that he had been arrested, questioned or charged with a new offense by law enforcement in Warren County.

{¶ 19} Weaver also failed to sufficiently rebut the State's evidence that Weaver did not complete his obligation to perform 40 hours of community service for a non-profit within the first six months of the diversion program.   Although Weaver testified that the work was performed for a church, Weaver did not present any corroborating testimony to verify when and for whom the volunteer work was performed. We conclude that the trial court could, on the evidence before it, find that Weaver did not meet his burden of proof to establish that the diversion contract should be reinstated.   Weaver's First Assignment of Error is overruled.

### IV. No Prejudice Was Shown by Defense Counsel's Failure to Request Intervention in Lieu of Conviction

{¶ 20} Weaver's Second Assignment of Error asserts:

APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 21}  Weaver argues that his trial counsel was deficient because he failed to counsel Weaver regarding his option to file a motion for intervention in lieu of conviction. To prevail on a claim for ineffective assistance of counsel, Weaver must not only show that his counsel's performance was deficient, but that a reasonable probability exists that, but for his counsel's omissions, the outcome would have been different. *State v. Jones*,

1st Dist. Hamilton No.C-130359, 2014-Ohio-3110, ¶ 27, citing *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶ 22} Granting an offender's request for "Intervention in Lieu of Conviction" is discretionary, but the trial court must first find that the offender meets the ten statutory requirements set forth in R.C. 2951.041 (B)(1) through (10). In the case before us, Weaver has not established that he met all of the statutory requirements, so even if his trial counsel had requested intervention in lieu of conviction, there is nothing in this record to demonstrate the existence of a reasonable probability that the outcome would have been different. Accordingly, Weaver's Second Assignment of Error is overruled.

## V. Conclusion

{¶ 23} Both of Weaver's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Dylan Smearcheck
Candi Rambo
Hon. Michael Tucker